Rainey *v.* Baltimore & O. R. Co. and others.

*(Circuit Court, W. D. Pennsylvania. March 26, 1883.*

RAILROAD — CONSTRUCTION — LOCATION — INJUNCTION — THREATENED INJURY TO LAND-OWNER.

Where, during the progress of the construction of a line of railway over a tract of land, a dispute arises between the land-owner and railroad company as to the true location of the railway under a written grant of way, and the question of fact is disputable and depends upon parol testimony, the court will not arrest the construction of the road by preliminary injunction, but will reserve the determination of the question for final hearing, no injury being threatened the land-owner which may not be compensated pecuniarily; but the court will require ample security to be given the land-owner for all damages recoverable by him in c ase of a final decision adverse to the company.

In Equity. *Sur* motion for a preliminary injunction.

*John Dalzell* and *Hon. J. S. Black,* for complainant.

*George Shiras, Jr., D. T. Watson,* and *Knox & Reed,* for defendants.

Before McKENNAN and ACHESON, JJ.

ACHESON, J. On the twenty-ninth day of September, 1880, the Baltimore & Ohio Railroad Company and the complainant entered into a written agreement, whereby the company covenanted "to construct and complete, or cause to be constructed and completed by a company authorized so to do, at the earliest practicable period, and not later than the thirtieth day of November, 1880, a branch railroad extending from and connecting with some point on the line of the Pittsburgh & Connellsville Railroad, north of Connellsville, to the mouth of Dickinson run, on the south bank of the Youghiogheny river, and to connect the same with the siding" of the complainant; "said branch road to be of the same gauge and character as the Pittsburgh & Connellsville Railroad." On the part of the complainant, the agreement contains the stipulation following, to-wit:

"Said Rainey agrees to give said first parties, [the Baltimore & Ohio Railroad Company,] or the corporation building said branch road, free of cost, a right of way for said branch road over the property of said Rainey, extending along the bank of the Youghiogheny river, on the north of his siding, at a proper distance therefrom; reserving, however, to said Rainey and his assigns the right of crossing said track."

The agreement embraces provisions touching other matters, none of which it is necessary to recite, save the concluding clause, which is in these words:

"It is further agreed by said first party that upon any failure or default made in regard to carrying out in good faith the covenants and guaranties herein stated, that then it will forthwith redeem and pay in cash said traffic bonds and interest, and forfeit any rights acquired by virtue of this contract, excepting that there shall be no forfeiture of said right of way for said branch road."

The Baltimore & Ohio Railroad Company commenced building this branch road in the summer or early fall of 1880, but it was not until July, 1881, that the rails were laid from the point of junction with the Pittsburgh & Connellsville Railroad to a point on the complainant's property opposite his coke ovens then erected. Connection was then made with the complainant's siding in front of his coke ovens, and the railroad extended westwardly over his property the distance of some 200 feet beyond the point of connection. The line of rail-

road so constructed over the complainant's property was along the bank of the Youghiogheny river, on the north of the complainant's siding as it then existed, and was at a proper distance therefrom. The railroad company then suspended the further construction of its road over the complainant's property, but the evidence tends to show that work on other portions of the line of road was thereafter prosecuted without interruption.

From the time the connection was made with the complainant's siding, as above mentioned, he has shipped his coke over the railroad so far as built to the Pittsburgh & Connellsville Railroad.

On October 5, 1882, the railroad company resumed work upon the complainant's property and commenced to extend its road over the same westwardly from the point it had reached in July, 1881; but a conflict in respect to the true line of location immediately arose between the parties and their respective employes. After July, 1881, the complainant had extended his siding westwardly, and he was engaged in its further extension in that direction when the railroad company recommenced work at that point. The complainant's land in many places rises very abruptly from the Youghiogheny river, and along the entire river front the ground suitable for railroad tracks lies within narrow limits. Hence the conflict betwen the parties, the complainant claiming the right to construct his extended siding and the railroad company its road upon substantially the same line. The real dispute between the parties is just here. Other questions have, indeed, arisen and are involved in the case, but this is the root of the controversy.

The complainant insists that the siding mentioned in the written agreement was not a siding then existing or visibly located upon his property, but a prospective siding thereafter to be constructed through his entire property, according to a survey and location already made, and of which he claims the Baltimore & Ohio Railroad Company then had knowledge. On the other hand, the defendants, denying such knowledge, maintain that as early as February, 1880, the entire line for said branch railroad had been surveyed, located, and finally and legally adopted, and that the same was visibly and plainly marked upon and through the complainant's land; that this location was known to him at and before the time the agreement of September 29, 1880, was executed; that before said date the complainant had located and defined his siding upon the ground, and the same was then actually graded, and was the siding referred to in the agree-

ment; that the parties contracted with reference to that siding, and the route for the railroad westwardly thereof, as then located and marked upon the ground, and that in the construction of the road the defendants have conformed and are conforming to that location.

In December last we heard and refused a motion for a preliminary injunction against the Baltimore & Ohio Railroad Company to restrain it from constructing the said branch road over the complainant's property on the line of location claimed by it. But, while refusing the motion, we required the company to give the complainant ample security for the payment of all damages recoverable by him in case the right claimed by the said company upon his property should, on final hearing, be decided adversely to it. This we did because, upon the affidavits then submitted to us, we regarded the question of fact as to what was the true location of the railroad over the defendant's property, under the agreement, as disputable. We were of opinion that we could not safely pass upon that question, or take action in respect to it, until final hearing, when, if our decision were in favor of the complainant, we could compel the railroad company to remove its track and restore the complainant's premises to their former condition, and make him adequate compensation in damages. No injury was or is threatened to the complainant that may not be thus compensated, whereas to arrest the railroad company in the construction of its road might result in embarrassments and losses very difficult of pecuniary recompense. Keeping in mind the well-known principle which requires courts of equity, in the granting or withholding of a preliminary injunction in a case involving a controverted question of fact, to balance the inconveniences and injury likely to be incurred by the respective parties, our conclusion was that in the present instance such injunction should be denied.

Recently the complainant amended his bill by making the Pittsburgh, McKeesport & Youghiogheny Railroad Company a party defendant, and by introducing new matter. We thereupon allowed the complainant to renew his motion for a preliminary injunction, and it has been again fully and ably argued, and the case reconsidered.

Having carefully re-examined the grounds of our former refusal to grant a preliminary injunction, we are entirely satisfied of the soundness of the conclusion we then reached. Indeed, the additional affidavits submitted on the part of the defendants confirm us in the view that we should forbear making any decree affecting the rights of the parties until final hearing.

As to the new questions raised by the amendment, it need only be said that we do not deem it proper at this stage of the case to discuss them, or express our views in respect thereto.

The motion for a preliminary injunction is denied.